IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARL DAVID JONES, | ) | |
| ID # 1517939, | ) | |
|        Petitioner, | ) | |
| vs. | ) | No. 3:14-CV-344-P (BH) |
| | ) | |
| WILLIAM STEPHENS, Director, | ) | Referred to U.S. Magistrate Judge |
| Texas Department of Criminal | ) | |
| Justice, Correctional Institutions Division, | ) | |
|        Respondent. | ) | |

<u>FINDINGS, CONCLUSIONS, AND RECOMMENDATION</u>

Pursuant to *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.  Based on the relevant filings and applicable law, the habeas petition should be **DENIED**.

## I.  BACKGROUND

Carl David Jones ("Petitioner"), an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), petitions for a writ of habeas corpus under 28 U.S.C. § 2254.  The respondent is William Stephens, Director of TDCJ-CID.

### A.    Procedural History

Petitioner challenges his custody pursuant to a judgment and sentence in *The State of Texas v. Carl David Jones,* No. F-0701220-I, in Criminal District Court Number 2 of Dallas County, Texas.  (doc. 13-1 at 71-72.)[1]  He was charged by indictment with first degree capital murder.  (doc. 13-1 at 6.)  He pled not guilty; a jury found him guilty on July 9, 2008, and the court assessed punishment at life imprisonment without parole.  (doc. 13-7 at 134; doc. 13-1 at 50-57, 71-72.)

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers on each filing.

Petitioner timely filed a notice of appeal, and the Fifth Court of Appeals affirmed his conviction in an unpublished opinion on October 21, 2009. *Jones v. State*, No. 05-08-00925-CR, 2009 WL 3366559 (Tex. App. [5th Dist.] 2009).  He filed a petition for discretionary review, which the Texas Court of Criminal Appeals refused on January 27, 2010. *Jones v. State*, PDR No. 1763-09 (Tex. Crim. App. October 21, 2009), *available at* http://www.search.txcourts.gov/Case.aspx?cn=PD-1763-09&coa=cosca&p=1.   On October 4, 2010, the Supreme Court refused his petition for writ of certiorari. *Jones v. Texas*, 562 U.S. 921 (2010).

On September 14, 2011,[2] Petitioner filed a state application for writ of habeas corpus. *See Ex parte Jones,* WR-80,339-02 at 2, 40; (doc. 13-16 at 7, 45). The Texas Court of Criminal Appeals ultimately denied the application without written order based on the findings of the trial court without a hearing on January 15, 2014. *See Ex parte Jones,* WR-80,339-02, at cover (doc. 13-16 at 2).  On January 22, 2014, Petitioner placed his § 2254 petition in the prison mail.[3]  (doc. 3 at 40.)

**B.    Factual Background**

The state appellate court summarized the facts as follows:

> Appellant and his wife, Paula Jones, the complainant, separated in 2005. Appellant was upset that she had separated from him and that she was dating another man. Jones refused to answer appellant's telephone calls and tried to conceal her location from him. Appellant tried to find Jones through their children, but they refused to disclose her location. Appellant told several people he was going to kill Jones and her boyfriend. On May 25, 2007, appellant learned from Jones's sister that Jones was staying with her mother, and he went to that location. Jones's sister called Jones and told her appellant knew where she was.

---

[2]Although the application was not file-stamped until October 13, 2011, Petitioner signed the document on September 14, 2011. (doc. 13-16, at 45.) The prison mail box rule applies to a petitioner's filing of his state writ application. *See Richards v. Thaler,* 710 F.3d 573, 576 (5th Cir. 2013).

[3]*See Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir. 1998) (for purposes of determining the applicability of AEDPA, under the mailbox rule, a federal petition is filed on the date it is placed in the prison mail system). Petitioner's § 2254 could not have been "filed" sooner than January 22, 2014, the date he indicated he placed it in the mail. (doc. 3 at 40.)

When he got to the house where Jones was staying, appellant stood outside the house and shouted that Jones had to the count of three to come outside or he would kick the door in. Jones did not go outside, and she tried to barricade herself in a back bedroom. Jones's niece, who was also inside the house, grabbed a golf club as a weapon. When Jones did not go outside, appellant kicked in the door. He entered the house, made his way to the back bedroom, and forced his way in. He confronted Jones and said, "Didn't I tell you, you couldn't leave me," and he slapped her. Appellant then drew a knife and stabbed Jones repeatedly, including in the heart. Jones's niece hit appellant with the golf club and knocked the knife away, but she lost control of the golf club. Appellant then grabbed Jones around the neck and head and twisted her head. Jones's niece hit appellant in the head with a piece of wood, and appellant let go of Jones and fled from the house. Appellant was apprehended soon afterwards. Jones died from the stab wounds appellant inflicted on her.

The indictment alleged appellant intentionally caused Jones's death by stabbing and cutting her with a knife and that he "was then and there in the course of committing and attempting to commit the offense of BURGLARY." See Tex. Penal Code Ann. 19.03(a)(2). (Vernon Supp.2009). The application paragraph of the jury charge instructed the jurors that to find appellant guilty of capital murder, they had to find beyond a reasonable doubt that he intentionally caused Jones's death by stabbing and cutting her with a knife, and that he "was then and there in the course of committing or attempting to commit the offense of burglary." The charge defined "burglary" as follows: "A person commits the offense of burglary, a felony, if, without the effective consent of the owner, the person intentionally or knowing enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." (Emphasis omitted.) The charge also included an application paragraph for the lesser included offense of murder. The jury found appellant guilty of capital murder as charged in the indictment.

*Jones*, 2009 WL 3366559 at *1.

## C.   **Substantive Issues**

Petitioner lists fourteen main grounds for relief:

I. Petitioner's trial counsel was deficient and provided ineffective assistance of counsel which resulted in the denial of his right to a fair trial when counsel:

> 1. told the venire panel that he had been a trial lawyer for only nine years, which resulted in the constructive denial of counsel;
>
> 2. failed to object to the prosecutor's leading questions & conclusions;
>
> 3. failed to object to the prosecutor's leading questions and testifying;
>
> 4. failed to object when the prosecutor impeached its own witness;

3

5. failed to object to the prosecutor's repeated solicitation of hearsay evidence;

6. failed to object to the prosecutor's statement as to how to determine a witness's truth and credibility, which was an inference as to Petitioner's decision not to testify;

7. failed to object when a witness gave medical and psychiatric testimony, though he was not qualified as an expert;

8. failed to have the only potential witness for the defense testify;

9. failed to object to the admission of Gabrielle Brown's affidavit, which contained hearsay and violated his right to confrontation;

10. failed to object to Detective Ellzey's misstatement of the law on "intent;"

11. failed to object to the many instances where the prosecutor coached the witnesses;

12. failed to object when one of the jurors offered testimony and acted as an interpreter, when he had not been sworn to translate;

13. failed to object to the admission of photographic evidence, though the proper predicate had not been laid;

14. failed to object to the relevance of the prosecutor's question as to the emotional state of bystanders;

15. failed to object to the prosecutor asking a witness to make a medical conclusion, though she was not qualified;

16. failed to object to the prosecutor asking Detective Ellzey to make a medical and psychiatric conclusion though he was not qualified as an expert;

17. failed to object to the admission of evidence, in which the chain of custody could not be verified;

18. failed to file a motion to suppress;

19. failed to object to Detective Ellzey's non-responses and refusal to answer questions put to him by the defense attorney;

20. failed to object to the prosecutor's question, "on what was the fear based on?;"

21. failed to request funds to hire a defense expert to rebut the state's expert

witnesses;

22. conducted a detailed cross-examination of Dr. Townsend-Parchman regarding the nature and extent of the victim's wounds;

23. failed to remain abreast and knowledgeable of relevant confrontation clause law;

24. failed to request an affirmative ruling on his objection to the prosecutor's improper closing argument;

25. failed to object to Detective Ellzey's improper testimony in which he told the jurors that Petitioner was guilty;

26. failed to subpoena Gabrielle Brown's telephone records for impeachment purposes;

27. failed to request a directed verdict on the ground that the state had not proven every element of the offense of burglary;

28. failed to subpoena Jessie Brown as a witness;

29. failed to request funds to hire a medical expert witness concerning head trauma affecting his voluntariness to confess; and

30. caused Petitioner prejudice through the cumulative effect of his errors;

II. He was subjected to double jeopardy and denied due process because the indictment did not specify how he committed a burglary, and the murder served three different purposes;

III. He was denied due process because the aggravating element of the capital murder statute is unconstitutionally vague and overbroad;

IV. He was denied due process because the state failed to prove an essential element of the offense of burglary;

V. He was denied due process because his conviction was obtained by piling inference upon inference and speculation upon speculation;

VI. He was denied due process because the prosecutor misstated the law;

VII. He was denied due process when the trial court denied his motion to suppress;

VIII. He was denied due process when the trial court overruled his objections;

IX. He was denied due process when the trial court admitted evidence that had not been properly authenticated;

X. He was denied due process due to the ineffective assistance of both trial counsel and appellate counsel;

XI. He was denied due process when the jury charge erroneously allowed the jurors to convict based upon its finding that Petitioner had committed burglary in the course of committing an aggravated assault or a murder;

XII. He was denied effective assistance of counsel on appeal when appellate counsel failed to raise the ineffective assistance of trial counsel;

XIII. He was denied due process because the jury's verdict was possibly not unanimous; and

XIV. His was denied due process rights due to the totality of errors and their cumulative effect which led to a failure of the judicial system.

(doc. 3 at 6-37.)

## II.  AEDPA STANDARD

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).  In this case, the denial of Petitioner's state writs constitute an adjudication on the merits.  *See Ex parte Thomas*, 953 S.W.2d 286, 288-89

(Tex. Crim. App. 1997) (holding that a denial, rather than a dismissal, signifies an adjudication on the merits).  The AEDPA standards in 28 U.S.C. § 2254(d) therefore apply.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established federal law, within the meaning of § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).

With respect to the "unreasonable application" standard, *Williams* instructs that a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001).  Likewise under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407.  "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).  Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).  The resolution of factual issues by the state court is presumptively correct and will not be disturbed

unless the state prisoner rebuts the presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL (Grounds I, X, and XII)

Petitioner's first ground asserts 30 instances of ineffective assistance of trial counsel.  (doc. 3 at 6-12.)  His  twelfth ground alleges that appellate counsel was ineffective for failing to raise on direct appeal trial counsel's ineffectiveness, and his tenth ground claims that he was denied due process based on the ineffectiveness of both trial and appellate counsel.  (doc. 3 at 22-26, 27-34.)

### A.    Trial Counsel

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. art. VI.  To successfully state a claim of ineffective assistance of counsel, a petitioner must ordinarily demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong pre-sumption that counsel's conduct falls within the wide range of reasonable assistance."  *Strickland*, 466 U.S. at 689.  "The reasonableness of counsel's actions may be determined or substantially influ-enced by the defendant's own statements or actions."  *Id*. at 691.  Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Cullen* v. *Pinholster*, 131 S. Ct.1388, 1403 (2011) (quoting *Strickland*, 466

U.S. at 690)).  This standard not only gives trial counsel the benefit of the doubt; it affirmatively entertains the range of possible reasons he may have had for proceeding as he did.  *Id*. at 1407.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." S*trickland,* 466 U.S. at 694; *Williams*, 529 U.S. at 393 (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

In habeas proceedings, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," not whether defense counsel's performance fell below *Strickland*'s standard. *Harrington v. Richter*, 526 U.S. 86, 101 (2011). This review is "doubly deferential" and gives both the state court and the defense attorney the benefit of the doubt.  *Burt v. Titlow*, 134 S. Ct. 10, 13 (2013).

Petitioner raised the same 30 instances of alleged ineffectiveness of trial counsel in his state writ application. (doc. 13-16 at 12-21, 75-79.) The same state district court judge who presided over the trial also prepared extensive findings of fact and conclusions of law on these claims. (doc. 13-16 at 119-36.) The Texas Court of Criminal Appeals denied Petitioner's state writ application on these findings without a hearing. *Ex parte Jones,* WR-80,339-02, at cover; (doc. 13-16 at 2).

### 1.      *Statements to venire panel regarding experience*

Petitioner asserts that he was constructively denied counsel because his attorney told the

venire panel that he had only been a lawyer for nine years, and he argues that his attorney was not qualified to handle a capital case.  (doc. 3 at 6.)

A constructive denial of counsel occurs in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all. *Gochicoa v. Johnson*, 238 F.3d 278, 284 (5th Cir. 2000); *see also U.S. v. Cronic*, 466 U.S 648, 658-660 (1984). Prejudice is presumed as the result of an alleged constructive denial of counsel, such that defendant is not required to show prejudice to establish violation of his right to counsel.  Petitioner must demonstrate that counsel was not merely incompetent but inert, providing no representation at all. *Gochicoa*, 238 F.3d at 284. The Fifth Circuit has refused to find constructive denial where defense counsel investigated only certain issues,  presented at trial in a manner that was "somewhat casual," failed to make a challenge for racial bias in jury selection, failed to object to a variation between the indictment and the jury charge, or failed to raise a meritorious issue on appeal. *Id.* (citing *Jackson v. Johnson*, 150 F.3d 520, 525 (5th Cir. 1998). The critical question "is whether the [petitioner] asserts that he received incompetent counsel, or none at all." *Id.* at 285 (citing *Childress v. Johnson*, 103 F.3d 1221, 1230 (5th Cir. 1997).

Here, the particular statement that Petitioner faults with occurred while his attorney was explaining capital murder to the jury panel. Counsel told the panel that it must look at the facts of the particular case, and he provided hypotheticals to illustrate the importance of finding an intent to kill. (doc. 13-5 at 92-93.)  He then made the point that he had never seen a trial where everybody agreed with everything:

> But the facts, the jury determines the facts of the case. I will bet you will hear conflicting stories. I have never seen a trial–I've only been doing this nine years, and

10

> I know some people have been doing it a lot more than me, but I've never seen a trial where everybody agreed with everything.

(doc. 13-5 at 101.) Petitioner fails to show how this statement demonstrates that counsel was not qualified to try his case or that he was constructively denied counsel during voir dire. His claim that he was denied counsel during any stage of his trial is not supported by the record. "Mere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (citations omitted). The Fifth Circuit has held "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition, unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) (citation omitted).

In response to this claim in Petitioner's state writ application, the state habeas court found:

> The first complaint is that counsel, Philip Hayes, was inexperienced and was not "capital qualified" which resulted in the applicant being denied counsel. Counsel told the jury that he had been practicing law for nine years. The court finds that this is a sufficient number of years in law to represent a capital case of this type. While the applicant claims that counsel was not "capital qualified" there is nothing to support that allegation. The State did not seek the death sentence in this case. A review of the record indicates that counsel had full command of the facts and the law. Counsel, at all times, fully and effectively represented that applicant. Proper pre-trial motions were filed, discovery was requested and made and pre-trial hearings were held. Counsel presented a plausible theory of the crime, that the applicant was a heartbroken spurned husband who only wanted to talk to his wife about the end of the marriage and never planned to kill her. Counsel made proper and timely objections to the evidence. The cross examination of the State's witnesses indicated that counsel had full knowledge of the facts and the law and brought inconsistencies of the witness testimony with their prior statements to the attention of the jury. All objections made properly preserved the issue for appeal. This court finds that counsel was fully qualified and able to represent the applicant. The knowledge and skill of counsel was such that he zealously and competently represented the applicant in this case. The applicant has the burden of proof in a writ of habeas corpus. *Ex parte Alexander*, 598 S.W.2d 308 (Tex. Crim. App. 1980). The applicant has failed to meet that burden. This allegation is without merit.

(doc. 13-16 at 122-23, Finding No. 3.) The Court of Criminal Appeals denied this claim when it

denied Petitioner's state writ application based on the findings of the trial court without a hearing. Petitioner has failed to prove that the state courts' adjudication of this claim was objectively unreasonable as AEDPA requires.

### 2.     Failure to object to prosecutor's questions calling for speculation

Petitioner alleges that his trial counsel failed to object when the prosecutor's questions called for assumptions, misinformation, and conclusions. (doc. 3 at 6-7.) He cites to several pages in the record but fails to state what objections his trial counsel should have made, or to show that they would have been sustained.

The state court found:

> The applicant claims [that the questions in 30 pages of the record] resulted in a conviction based upon speculations, assumptions and misinformation.  No proof is offered to support the mere citations to the record.  The court has read the record in this case and cannot find a reason for objecting to these questions.  The questions involved what the witness knew from observation of the applicant or the commission of the crime.  Counsel was not ineffective for failing to object when there were no grounds for objection. This allegation is without merit.

(doc. 13-16 at 123, Finding No. 4.)  As noted, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition to be of probative evidentiary value when they are not supported by anything else in the record.  *Ross,* 694 F.2d at 1011.  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); *see Strickland*, 466 U.S. at 687-88.  This claim must be denied.

### 3.     Failure to object to the prosecutor's leading questions

Petitioner complains that his attorney failed to object to the prosecutor's leading questions. He cites to 45 different pages of the record but does not specify which questions he believes are objectionable.  (doc. 3 at 7.)  He provides no evidence that the trial court would have sustained the

objections, and does not show how the objections would have actually changed the result of his trial. *See Schlang*, 691 F.2d at 799; *Strickland*, 466 U.S. at 687.  Moreover, a leading question is not necessarily objectionable. Texas Rule of Evidence 611(c) provides that leading questions on direct examination are proper "if necessary to develop the testimony of a witness."  Leading questions are permitted to refresh a witness's recollection, *see Hartsfield v. State*, 29 S.W. 777, 778 (Tex. Crim. App. 1895);  to clarify a witness's testimony,  *see Myers v. State*, 781 S.W.2d 730, 733 (Tex. App. Fort Worth–1989); and to question a child witness, *see Rodriguez v. State*, 997 S.W.2d 640, 643 (Tex. App. –Fort Worth, 1999). Asking harmless leading questions is not commended, but courts seldom reverse a case because questions are leading. *Lopez v. State*, 630 S.W.2d 936 (Tex. Crim. App. 1982) (citing *Hill v. State,* 161 S.W.2d 80 (1941)).

Petitioner raised this claim in his state writ application.  In response, the state habeas court entered the following factual finding:

> The next complaint involves the manner in which the prosecutor questioned the witnesses. Again, the applicant cites 45 pages in the record without specifying the alleged error by the prosecutor or the grounds for objection. The applicant has the burden of proof in a writ of habeas corpus. *Ex parte Alexander*, 598 S.W.2d 308 (Tex. Crim. App. 1980). The applicant has failed to meet that burden. The court has read the record and finds there is no error in the questions of the prosecutor, therefore, counsel cannot be held ineffective. This allegation is without merit.

(doc. 13-16 at 123-24, Finding No. 5.)  Failure to make meritless objections does not rise to ineffectiveness. *Clark,* 19 F.3d at 966; *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (citing *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness . . . .").  Petitioner has failed to undermine the deference to which the state court finding is entitled or show that its denial of this claim was objectively unreasonable.

13

### 4.      *Failure to object to the prosecutor's impeachment of his own witness*

Petitioner next complains that his attorney failed to object to the impeachment of his own

witness.  His son testified that he did not remember Petitioner making threats against his mother.

The prosecutor reminded the son that he had previously told him that his father had made threats:

Q. Had he made any other threats just prior to this? I believe y'all worked together for a time; is that correct?

A. Yeah, we did.

Q. Okay. Where did you-all work at?

A. We worked at Luby's in Carrollton.

Q. Okay. And how long–what months did y'all work at Luby's?

A. Between like April–like, February–April–to like March.

Q. Okay. And whenever y'all worked, did y'all ride over there together at times?

A. Sometimes.

Q. Okay. Did he ever make any threats about your mom's life while y'all were working together?

A. No, not really, no.

Q. Okay. And you remember talking with me earlier, is that correct, about this case, right?

A. Right.

Q. And you remember us sitting down and I asked you exactly what happened and to give me a little bit about the history of what was going on. Do you remember doing that?

A. Yes.

Q. Okay. And do you remember telling me that whenever y'all worked together that he was constantly threatening your mom's life?

A. Yes, I do.

Q. Okay. So you told me that, and all I asked you, as far as what kind of – what threats or had he made threats against your mom; is that correct?

A. Uh-huh. Yes.

Q. And you told me in specifics that whenever y'all would go to work that he would –there were numerous times during that time that y'all worked together that he was making threats about your mom's life; is that correct?

A. That's correct.

(doc. 13-6 at 136-38.)

In response to this claim in the state writ application, the trial court found:

The applicant next claims that counsel did not object to the State impeaching its own witness. The State simply reminded the witness of his previous statement regarding the threats made by the applicant to the victim. This is permitted under Tex. R. Evid. R. 607. Counsel was not ineffective for failing to take futile actions. This allegation is without merit.

(doc. 13-16 at 124, Finding No. 6.)

Texas Rule of Evidence 607 states that the credibility of a witness may be attacked by any party, including the party calling the witness. Ter. R. Evid. 607 (West 2012).  Under this rule, the prosecutor's efforts to illicit a truthful response by impeaching the son's testimony with his prior statements was permissible.   An objection would have been futile. *See Clark*, 19 F.3d at 966. Petitioner has failed to establish that the denial of this claim was unreasonable.

### 5.     *Failure to object to hearsay*

Petitioner cites to several instances in the record where he believes his counsel should have objected to hearsay testimony.

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d) (West 2012). The state habeas court found:  "The cited references in the writ do not support the allegation.

The questions asked by the prosecutor related to specific events the witnesses experienced and were proper questions. This allegation is without merit." (doc. 13-16 at 124, Finding No. 7.)

In one example, the victim's sister testified about the family's efforts to get the victim to a safe house after she and Petitioner separated. She stated, "[w]e called the police and they said what we could do for her.. . ." "We took her to the police station in Plano because of fear of him harming her". . . "We were not allowed to know where she was located." (doc. 13-6 at 110-11.) Petitioner asserts that the sister cannot answer for persons identified as "we". The reference to "we" included her, and she was testifying as to her own experience. Petitioner fails to elaborate on how this example, or any of his other examples, amounts to objectionable hearsay. He therefore cannot show that his counsel was deficient for failure to object. He has failed to undermine the presumption that trial counsel's decision not to object was the product of reasoned trial strategy, or to show that the denial of this claim based on the trial court's findings was unreasonable.

### 6. *Failure to object to the prosecutor's comments on his decision not to testify*

Petitioner faults counsel's failure to object to the prosecutor's statement that the only way to determine truth and credibility is to listen to witnesses that take the stand and observe their body language on the stand, which he contends amounted to "conjecture on how the jurors should treat his decision not to testify." (doc. 3 at 6-8.) The prosecutor made the statement during voir dire, at a time when Petitioner had not yet stated that he would not testify. (doc. 13-5 at 30; doc. 13-7 at 90-91.) The prosecutor made no reference to the defendant not testifying, only to the jury's duty to judge the credibility of witnesses. (doc. 13-5 at 30.) Ultimately, the jury was instructed: "In this case, the defendant has elected not to testify, and you are instructed that you cannot and must not refer or allude to that fact throughout your deliberations or take it into consideration for any purpose

whatsoever as a circumstance against the defendant." (doc. 13-7 at 98.)

In response to this claim, the state habeas court found:

> The next allegation of ineffective assistance of counsel involves a statement by the prosecutor that the jury should determine the credibility of the witnesses by their testimony and their body language on the stand. The applicant claims this was a "conjecture on how the jurors should treat my decision not to testify." The prosecutor's statement in question was made during voir dire and was not a reference to the applicant's decision not to testify. This jury was properly instructed on the right of the applicant not to testify. It appears to this court that the applicant is intentionally trying to mislead the court when claiming this statement was an attempt by the prosecutor to comment on the decision of the applicant not to take the stand in this case. Counsel had no right to object to this statement made during voir dire therefore, counsel cannot be held ineffective for failing to take this futile action. This allegation is without merit.

(doc. 13-16 at 124, Finding No. 8.)  Petitioner has failed to show any reason for his trial counsel to have objected. He has failed to show any deficiency by counsel, or that the state court's adjudication of this claim was unreasonable.

### 7.    *Failure to object to Detective Ellzey's medical and psychiatric testimony*

Petitioner argues that his attorney should have objected when Detective Ellzey gave medical and psychiatric testimony that he was not qualified to give.  (doc. 3 at 8.)  In reviewing this claim, the trial court found,

> Applicant claims that counsel was ineffective for failing to object to the testimony of Detective Paul Ellzey that consisted of medical and psychiatric testimony that the witness was not qualified to provide. The testimony in question was presented to the court in response to a motion on the voluntariness of the applicant's statement. The testimony was proper and relevant and made to the court, not the jury. Counsel had no grounds to object and cannot be held ineffective. This allegation is without merit.

(doc. 13-16 at 125, Finding No. 9.)

 Texas Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a)

17

rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact issue.

Detective Ellzey testified at a hearing on the voluntariness of Petitioner's statement to the police. (doc. 13-6 at 10-13.) Petitioner was transported to the Dallas Police Department's Homicide Division to speak to Detective Ellzey. (*Id.* at 11.) The prosecutor and defense attorney asked the detective several questions as to Petitioner's ability to comprehend what was going on, based on his opinion and firsthand experience with the witness. (*Id.* at 10-22.) Petitioner fails to point to any specific questions that he believes were objectionable or in violation of the Texas Rules of Evidence. The testimony was necessary and appropriate in a hearing to determine the voluntariness of Petitioner's statement to police. Petitioner has failed to establish that his attorney was ineffective for failure to object. He has failed to show that the denial of this claim, based on the trial court's finding, was objectively unreasonable.

### 8.     *Failure to call the only potential defense witness*

Petitioner complains that counsel made no effort to subpoena Labresha Griffin, whose testimony could have impeached that of the state's witness, Gabrielle Brown. (doc. 3 at 8.)

"'[H]ypothetical or theoretical' testimony will not justify the issuance of a writ. . ." *See Martin v. McCotter,* 796 F.2d 813, 819 (5th Cir. 1986) (quoting *Larsen v. Maggio*, 736 F.2d 215, 218 (5th Cir.1984)). "In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial." *See Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985) (citing *Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir. 1981)). "Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *See Boyd*, 661 F.2d at

390 (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).   A petitioner must overcome the presumption that the "challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.   "Where the only evidence of a missing witness' testimony is from the defendant, this Court views claims of ineffective assistance with great caution." *See Lockhart v. McCotter,* 782 F.2d 1275, 1282 (5th Cir. 1986) (citing *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985)); *see also United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (Petitioner failed to produce the affidavit of the uncalled witness).

Here, counsel asked Gabrielle Brown if she knew where to find Labresha Griffin, and she responded that Griffin was in Florida. (doc.13-6 at 80.)  Counsel mentioned that he was unable to find Griffin in his closing argument:

> One of the witnesses that they chose not to bring or they couldn't bring because she's in Florida. I mean, I couldn't find her. I guess they can't find her either. . . .

(doc. 13-7 at 115.)

The trial court found that Petitioner's counsel was not ineffective for failing to call Griffin as a witness since testimony revealed that she was unavailable and had moved to Florida. (doc.13-16, at 125,  Finding No. 10.)  It noted that the evidence of Petitioner's guilt was so overwhelming that testimony from Griffin would not have made a difference in the trial's outcome.  (*Id*.) The Court of Criminal Appeals denied this claim based on the trial court's findings.  (*Id*. at cover.)

Petitioner fails to satisfy his burden of showing that the witness would have testified at trial. *Alexander*, 775 F.2d at 602. He has not shown what Griffin's testimony might have been and that she would have testified in his favor. *See Martin*, 796 F.2d at 819.  He has failed to demonstrate that the state courts' adjudication of his claim was unreasonable.

### 9.      Failure to object to admission of Gabrielle Brown's affidavit

Petitioner next alleges that his attorney was ineffective for failing to object to the admission of Gabrielle Brown's affidavit because it contained hearsay statements by the victim. (doc. 3 at 8.) Petitioner raised this claim in his state writ petition. The state habeas court pointed out that there was no reason for counsel to have objected, since the affidavit was introduced for record purposes only and not presented to the jury. (doc. 13-16 at 126, Finding No. 11.)

Exhibit 29 was a five-page statement that Gabrielle Brown gave to the police. (doc. 13-6 at 97; 13-8 at Exhibit 29.)  The prosecutor used it to refresh Brown's recollection during her testimony about whether she originally wrote in her statement that the victim had been stabbed in the back. (doc. 13-6 at 97-98.)  The prosecutor asked that it be used for record purposes only and it was admitted without objection.  (*Id.*) Nothing in this record reveals any hearsay statement from the victim to which Petitioner's attorney should have objected. Petitioner has failed to undermine the deference to which the state habeas court's findings are entitled. He has failed to establish that the highest state court's rejection of this claim was unreasonable.

### 10.      Failure to object to Detective Ellzey's misstatement of the law

Petitioner claims that counsel should have objected to Detective Ellzey's misstatement of the law on intent. (doc. 3 at 8.) In its findings, the state habeas court pointed out that Petitioner's attorney did object, and the objection was sustained. (doc. 13-16 at 126, Finding No. 12.)

Q. Detective Ellzey, also, if you go and display a knife to someone, that's aggravated assault; is that correct?

A. By you having a knife in your hand and illegally entering a residence, that is intent to commit something other than just –

Mr. Hayes: And I object –

20

A. – to talk to somebody.

Mr. Hayes: –to this witness trying to invade the province of the jury.

The Court: Overruled. Let's move along.

Mr. Hayes: He can't speak to intent because he doesn't know.

Q. (By Mr. Harris) By looking at intent, you'd want to look at all surrounding circumstances, wouldn't you?

A. As I tried to explain, yes, sir.

Q. Exactly. And if someone goes over to the house, if they want to talk, they might not necessarily carry a weapon, is that safe to say?

A. You're absolutely correct.

Q. And also, whenever they go over to that house and they do carry a weapon, they might be –that might reflect their intent of something other than just talking.

A. That's explained very eloquently.

Q. And if they go over to that house and they threaten the individual with a knife, that is an aggravated assault; is that correct?

A. Absolutely. Because a knife is a deadly weapon.

Q. And if they break in a door or bust into a house without someone's consent and they've displayed that knife, that's a burg-hab with intent to commit an aggravated assault?

Mr. Hayes: I object. That's a misstatement of the law, and, again, it invades the province of the jury.

The Court: Sustained. Let's move along.

(doc. 13-6 at 222-23.)  Petitioner's claim lacks merit, and he has failed to show that the state courts' adjudication of his claim was objectively unreasonable.

### 11.    *Failure to object to the prosecutor's coaching of witnesses*

Petitioner argues that the prosecutor coached witnesses, which is evident from the way in

which he asked questions and the witness answered, and that counsel should have objected.  (doc.

3 at 8.)  He cites to Gabrielle Brown's eyewitness testimony of Petitioner stabbing the victim:

> Q. Okay. So he's making stabbing marks, or he's stabbing her at this point?
>
> A. Yes.
>
> Q. Your perception was – or it looked like –
>
> A. He was stabbing her.
>
> Q. – she had been stabbed in the back?
>
> A. Yes.
>
> Q. Okay. But that was your perception at that time, correct?
>
> A. Yes.

(doc.13-6 at 98-99.)

> The state habeas court found:
>
> The applicant claims that counsel was ineffective for failing to object to the way in which the prosecutor questioned the witnesses. The court finds no error in the questioning by the prosecutor therefore, counsel cannot be found ineffective for failing to object to the questions. There was no prosecutorial misconduct in this case and the applicant's due process rights were not violated. These allegations are without merit.

(doc. 13-16 at 126, Finding No. 13.)  Petitioner fails to show how the questioning amounts to

coaching or that the state courts' adjudication of this claim was objectively unreasonable.

### 12.    *Failure to object to juror's offered testimony*

Petitioner alleges that his attorney should have objected when a juror offered testimony that

a witness was a bricklayer, and that the juror acted as an interpreter when he had not been sworn to

translate. (doc. 3 at 9.)

The prosecutor asked a witness, through an interpreter, what kind of work he did.  The

interpreter then stated, "He's saying something I don't understand. It's something about stones or rocks." (doc. 13-6 at 150.)  A juror then interjected, "He's a bricklayer." (*Id.* at 151.)

The witness testified that he went to a house he was remodeling, heard the back door close, and noticed that the back door was broken and that there was blood on the door knob. (*Id.* at 151-52.) When he looked outside, he saw a black man run to the back yard of the house, jump the fence and hide behind some bushes. (*Id.* at 153.)  The witness chased the man down the block and told him to stop because he was calling the police. (doc. 13-24 at 1-2.)  He saw blood on the man's face. (*Id.* at 2.)  The man ended up following the witness and repeatedly told him to him to go ahead and "call the police because he had killed his wife." (*Id.*)

The state habeas court made the following finding of fact with regard to this claim:

> The applicant claims counsel was ineffective for failing to object to a juror interpreting a statement made by a witness that the official interpreter could not understand. When the witness, Domingo Avila, was called his testimony was presented through an interpreter. (RR4:154) When asked what kind of work he did the interpreter did not understand the answer. (RR4: 154) A juror answered that the witness was a bricklayer. (RR4:155) No objection was made to the juror's statement. The court finds that the testimony that the juror interpreted was not relevant to any of the eyewitness testimony of Mr. Avila. The court can find no error in counsel failing to object to this juror statement. Further, even if error was present, it cannot be said that but for the failure to object, the outcome of the proceeding would have been different. As discussed above, there is overwhelming evidence of the guilt of the applicant. The applicant has the burden of proof in a writ of habeas corpus. *Ex parte Alexander*, 598 S.W.2d 308 (Tex. Crim. App. 1980). The applicant has failed to meet that burden. This allegation is without merit.

(doc. 13-16 at 126-27, Finding No. 14.) Given the substance of the witness' testimony, Petitioner has not shown how a juror's interpretation of the fact that the witness was a bricklayer was objectionable, or how the outcome of the trial was affected by this information.  He has failed to undermine the presumption of correctness that should be attributed to the trial court finding, or to show that the denial of his claim in his state writ based on the trial court's findings was objectively unreasonable.

### 13.   *Failure to object to the admission of photographs*

Petitioner alleges that his trial counsel was ineffective for failing to object to the admission

of photographs because they were not properly authenticated.

The state habeas court found:

> The applicant next claims that counsel was ineffective for failing to object to the
> introduction of photographs into evidence without proper authentication. The
> applicant claims he was denied his right to confrontation because the State did not
> call the photographer or the picture developer to the stand to authenticate the photos.
> Pursuant to the Tex. R. Evid. R. 901(b)(1), the photographs were authenticated by
> the witness who testified said that they were pictures of what the area in question
> looked like at the time they were taken. Since the pictures were properly
> authenticated at the time they were introduced, counsel had no grounds for objecting.
> This allegation is without merit.

(doc. 13-16 at 127, Finding No. 15.)

Texas Rule of Evidence 901(a) provides that the requirement of authentication or

identification as a condition precedent to admissibility is satisfied by evidence sufficient to support

a finding that the matter in question is what its proponent claims. Section (b)(1) allows for a witness

with knowledge to testify that a matter is what it is claimed to be. Here, the bricklayer identified

photographs that the police took of the house on the day he saw a man running out the back door.

(doc.13-6 at 155-60; doc. 13-8 at Exhibits 30-41.)  Petitioner has failed to establish a basis for

objection. He has failed to show that the denial of this claim based on the trial court's findings was

objectively unreasonable.

### 14.   *Failure to object to the prosecutor's questioning of bystander witnesses*

Petitioner argues that the prosecutor's question about the emotional state of bystanders at the

scene was objectionable as irrelevant. (doc 3 at 9.) The prosecutor asked Officer Neal about the

emotional state of the individuals at the scene when he arrived. Officer Neal answered that they were

hysterical. They were crying, hugging each other, and very upset. (doc.13-6 at 167.) Officer Neal also testified to the actions she took when she arrived at the scene. (*Id.* at 167-68.)

The state habeas court made the following finding:

The applicant claims counsel was ineffective for failing to object to the testimony of the police officer who arrived at the scene soon after the victim was taken away by ambulance. He claims it was irrelevant and prejudicial. The events at the scene of the crime so soon after the commission of the offense are relevant for the jury to consider. This evidence was properly admitted and counsel had no grounds to object. This allegation is without merit.

(doc. 13-16 at 127, Finding No.16.)

Petitioner has failed to show how his attorney was deficient for failing to object to the question or testimony, or how the testimony could have altered the outcome of his trial. The state habeas court found the testimony relevant and not worthy of an objection. Petitioner has failed to show that the state court's adjudication of this claim was unreasonable.

### 15.   *Failure to object to a lay witness offering medical conclusions*

Petitioner argues that his attorney should have objected when the prosecutor asked Officer Neal to draw medical conclusions that she was not qualified to give. (doc. 3 at 9.) The prosecutor questioned Officer Neal, the first officer to arrive at the scene, about her observations of Petitioner:

Q. Officer Neal, did the defendant appear to understand everything that was going on when you were with him?

A. Yes, sir.

Q. Okay. And did he appear to be able to relay his points or anything that he wanted y'all to know about and to say? Did he seem to be able to do that?

A. Yes, sir.

Q. And at any point, did he even complain to y'all, you know, my head is hurting; I'm having these bad headaches; my hand is hurting? Do you remember that?

A. All I recall is him saying that his hand was hurting because of the way he was in the car.  He was putting pressure on his hand.

Q. Okay. The way the cuffs--

A. Yes, sir.

Q. –the way he had been cuffed?

A. Yes, sir.

Q. Okay.  But you don't recall or remember his ever making any sort of statements as far as anything to do with his head injuries?

A. I don't recall him saying anything like that.

(doc.13-6 at 180.)

In response to this claim, the state habeas court found:

The applicant claims that counsel was ineffective for failing to object to the prosecutor's questions of a police officer that called for medical conclusions. The questions asked by the prosecutor were simply his observations of the applicant at the time of the incident. The prosecutor's questions were in response to certain questions asked by counsel on cross-examination and as such, not subject to objection. This allegation is without merit.

(doc. 13-16 at 128, Finding No. 17.)

Under Texas Rule of Evidence 611(b), a witness may be cross-examined on any matter relevant to any issue in the case, including credibility. *See U.S. v. Walker*, 613 F.2d 1349, 1253 (5th Cir. 1980) (finding subject matter of redirect admissible because it was limited to the subject matter of the cross examination).  A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Tex. R. Evid. 602.  Here, the prosecutor's questions were limited to the subject matter of cross examination and to her observations of Petitioner's head injury and behavior. (doc. 13-6 at 177-78.)  Petitioner has failed to undermine the deference that should be attributed to the trial court's findings. He has failed to

show how the state court's adjudication of this claim was unreasonable.

### 16.    *Failure to object to Detective Ellzey's medical and psychiatric testimony*

Petitioner claims his attorney should have objected when the prosecutor asked Detective

Ellzey to make medical and psychiatric conclusions, although he was not qualified as an expert. (doc.

3 at 9.)

The state habeas court made the following finding:

> The applicant claims that counsel was ineffective for failing to object to the prosecutor's questions of [Detective] Ellzey regarding the physical and mental state of the applicant at the time of this confession. The questions asked by the prosecutor involved what the police detective witnessed at the time the applicant made his confession. As such, the questions were proper. This allegation is without merit.

(doc. 13-16 at 128, Finding No. 18.)

Under Texas Rule of Evidence 602, a witness may testify to a matter of which he has personal

knowledge. The prosecutor asked, based on Detective Ellzey's personal observation, if Petitioner

seemed to understand what the detective was saying, if Petitioner seemed confused about what he

was asking about, and if Petitioner appeared to want to talk. (doc. 13-6 at 202.) These questions only

required that the detective respond based on his personal observations.  Petitioner has failed to show

that his attorney should have objected, that the trial court would have sustained the objection, or that

the state courts' determination that the claim lacks merit is unreasonable.

### 17.    *Failure to raise a chain-of-custody objection*

Petitioner alleges that counsel was ineffective for failing to object during the testimony of

Detective Richards and Detective McLemore to the admission of state's exhibits 1A, 2A, 3A, 44, and

45, because the chain of custody was not verified or reliably established. (doc. 3 at 9-10.)

The state habeas court made the following finding:

The applicant claims that the chain of custody was not established at trial on various exhibits presented by the State and that counsel was ineffective for failing to object to the admission of the evidence before the jury. The first three complaints refer to exhibits brought to the court for a pre-trial hearing. The exhibits were brought to the court for discovery purposes, not for admission to the jury. When the exhibits in question were brought to the attention of the jury, the prosecutor properly presented evidence as to the chain of custody and established that the evidence was not tampered with prior to trial. As there was no chain of custody issue presented, counsel was not ineffective for failing to object to the evidence on these grounds. This allegation is without merit.

(doc. 13-16 at 128, Finding No. 19.)

Under state law, "as a general rule an object offered in evidence should not be rejected because it is not positively identified as the exact object that was connected with the crime." *See Hicks v. State*, 508 S.W.2d 400, 402 (Tex. Crim. App. 1974) (citing *Pryor v. State*, 449 S.W.2d 482 (Tex. Crim. App. 1969)); *see also Binyon v. State*, 545 S.W.2d 448, 452 (Tex. Crim. App. 1976). In *Binyon* the Court of Criminal Appeals held that "the lack of positive identification affects the weight of the object as evidence, rather than its admissibility." *Id.* (citing *Cole v. State*, 450 S.W.2d 661 (Tex. Crim. App. 1970)).

Petitioner cites to a pre-trial hearing in which Detective Richards testified that Exhibit 1A was a box of items, including a knife handle, three sections of a wooden stick, and five blood samples. (doc. 13-4 at 7.) State's exhibits 2A and 3A were two golf clubs. (*Id.* at 8.) Detective Richards stated that he collected the blood samples as well as the golf clubs and marked them with identifying markings and his initials. (*Id.* at 7-8.) They were sent to Southwestern Institute of Forensic Sciences ("SWIFS") for testing and then returned to the police department's property room, where they were stored until the prosecutor asked him to bring them for the hearing. (*Id.* at 8-9.) Because no jury was present, the items were not admitted into evidence, and there was no reason for counsel to object.

Petitioner also cites Detective McLemore's testimony that he took a buccal swab and

photographs of Petitioner at the police department. (doc. 13-6 at 183, 187.) Detective McLemore

testified that he labeled the shirt Petitioner was wearing and the buccal swab as exhibits 44 and 45,

sealed the bags, and sent them to SWIFS. (*Id.* at 189-91.)  Petitioner has identified no  evidence of

the break in the chain of custody to which counsel should have objected.  He has failed to establish

ineffective assistance of counsel under either prong of *Strickland* or to show that the state courts'

adjudication of this claim was unreasonable.

### 18.      *Failure to file a motion to suppress*

Petitioner argues that his trial counsel was ineffective for failing to file a motion to suppress

Exhibits 1A, 2A, 3A, 44, and 45 because the chain of custody could not be verified. (doc. 3 at 10.)

The state habeas court found:

> Applicant claims that counsel was ineffective for failing to file a motion to suppress
> various State's Exhibits because the chain of custody was not established. As
> discussed above, prior to the presentation of the evidence to the jury, the proper
> chain of custody was established. Counsel was not ineffective for failing to take
> futile actions. This allegation is without merit.

(doc. 13-16 at 128-29, Finding No. 20.)

"Counsel is not required by the Sixth Amendment to file meritless motions." *United States
v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).  For the same reasons that an objection based on an

unverified chain of custody would have been futile, a motion to suppress would also have been futile.

Petitioner has failed to demonstrate that the state courts' adjudication of this claim was unreasonable.

### 19.      *Failure to object to Detective Ellzey's answers during cross-examination*

Petitioner alleges that his trial counsel should have objected to Detective Ellzey's non-

responses and refusal to answer questions. (doc. 3 at 10.)  He believes in a "post/911 atmosphere,"

his attorney's failure to object may have prejudiced the jurors towards him. (*Id.*)

The state trial court found:

> In the next ground of error the applicant complains that he was prejudiced by the police officer's testimony in response to counsel's questions. The applicant claims that in a "post-9/11" world, the juror may have resented counsel's actions and this caused prejudice to the applicant. The record reflects that counsel vigorously cross-examined the police officer as to why he might have lied to the applicant in order to get a confession from him. In this case counsel was vigorously representing the applicant and trying to get the jury to question the validity of the applicant's damning confession. As the State presented the videotape of the confession to the jury, counsel was trying to discredit the confession and the tape in the eyes of the jury. The court finds that counsel had sound legal reason for pursuing the cross-examination and therefore, cannot be held ineffective. This allegation is without merit.

(doc. 13-16 at 129, Finding No. 21.)

> Petitioner cites to the following exchange:
>
> Q. You're actually–you're lying to defendants?
>
> A. Absolutely. Yes, sir, as I just explained to the jury.
>
> Q. Do you try to trick them into saying things?
>
> A. It's not tricking. It's just–if we believe that they're holding back facts and they think that we have evidence on them, then they'll go ahead and sometimes tell you the whole story.
>
> Q. You never get confused yourself, the difference between the truth and a lie, where one stops and one starts?
>
> A. I know the difference between the truth and a lie. . .

(doc. 13-6 at 207-08.)  Petitioner has failed to show at what point his trial counsel should have objected or that an objection would have been granted.  He has failed to undermine the presumption that counsel's strategic decision not to object, but instead to strenuously cross-examine the detective, was the product of reasoned trial strategy. Petitioner has failed to demonstrate that the denial of this claim based on the trial court's findings was objectively unreasonable.

### 20.      Failure to object to the prosecutor's questioning of Renita Anderson

Petitioner argues that counsel should have objected to the prosecutor's question to Renita Anderson about the basis for the victim's fear because she was not qualified to give an opinion as to the reason for another person's fear. (doc. 3 at 10.)

The state habeas court made the following finding:  "The record reflects that counsel did object to this testimony and it was overruled. This allegation is without merit." (doc. 13-16 at 129, Finding No. 22.)

Because trial counsel did in fact object, he was not ineffective for failure to object. :

Q.(By Mr. Harris) Why did she go to the shelter?

A. In fear of him doing – harming her.

Q. She had a fear of him harming her.

A. Yes.

Q. And what was the fear based on?

     Mr. Hayes: Judge, that's all based on hearsay and speculation.

The Court: Overruled.

(doc. 13-6 at 109-10.)  This claim lacks merit in accordance with the state courts' rulings.

### 21.      Failure to request funds to hire a defense expert

Petitioner complains that counsel failed to request funds for a defense expert witness to rebut the state's expert witnesses' testimony on DNA, blood, and forensic evidence. (doc. 3 at 10.)

The state habeas court found:

The applicant claims that counsel was ineffective for failing to request funds to hire an expert witness to challenge the State's forensic evidence. In light of the overwhelming evidence of guilt in this case, and in the absence of any assertion as to what a forensic evidence witness would have presented at trial, this court cannot

hold counsel ineffective on these grounds. This allegation is without merit.

(doc. 13-16 at 129, Finding No. 23.)  It also found that Petitioner had threatened his wife:

> The applicant spent long periods of time questioning his children and other family members trying to find his wife.  The applicant threatened to kill her numerous times prior to completing the act.  When the applicant did find her, he threatened her, kicked down the door to the house, and in front of the victim's niece, stabbed her to death. The eyewitness to the offense testified at trial.  The applicant then proceeded to run from the crime scene and hid in a neighbor's house. When found by the neighbor, the applicant ran away all the while shouting that he had just killed his wife.  The neighbor witness testified at trial. When stopped by the police soon after, the applicant told the police he killed his wife and was video and audio taped admitting to the crime in the back of the cop car. After receiving treatment for his injuries, the applicant was taken to the police station where he again confessed while being video taped.  After being video taped, the applicant was taken to Parkland Hospital for non-threatening injuries to his hand and knee. The medical records from this visit indicate that the applicant also told the hospital personnel that the injuries were obtained while stabbing his wife. Basically, the applicant confessed his guilt to every person he saw after the commission of this offense.

(doc. 13-16 at 121-122, Finding No. 2.)

Petitioner has shown neither what expert testimony counsel should have presented, or that it would have been favorable to his case. *Alexander*, 775 F.2d at 602; *see Martin*, 796 F.2d at 819.  He has not shown that counsel's decision not to call an expert witness was deficient, or how expert testimony could have possibly altered the trial's outcome.  He has failed to demonstrate that the state court's adjudication of his claim was objectively unreasonable.

### 22.    *Failure to stipulate to the extent of the victim's injuries*

Petitioner alleges that counsel should have stipulated to the victim's injuries instead of cross-examining the medical examiner about their nature and extent.  (doc. 3 at 10.)

The state habeas court made the following finding:

> The applicant claims that counsel was ineffective for failing to stipulate to the injuries to the victim in this case. He claims that had counsel stipulated to this evidence, the jury would not have been shown the extent of the injuries to the victim.

32

> The photos and testimony of the pathologist were admissible even if counsel had stipulated to the injuries. This was relevant evidence for the jury to consider in determining the applicant's guilt in this case. This allegation is without merit.

(doc. 13-16 at 130, Finding No. 24.)

In order to prove its case, the state needed to show that Petitioner intentionally caused the victim's death by stabbing and cutting her with a knife, and that he did so while in the course of committing burglary. (doc. 13-1 at 6.) As the state habeas court found, the testimony of the medical examiner was necessary to prove that Petitioner actually intentionally stabbed the victim with a knife. The medical examiner testified that stab wound number 1 went directly to the victim's heart, and that there was no way to survive that injury. (doc. 13-7 at 58.) Stab wound number 2 went directly to her liver. (*Id.* at 59.) Stab wound number three went to the victim's right thigh, and the "broken-off knife blade" was still in the victim's body. (*Id.* at 60.) Stab wound number 4 went into the victim's knee and thigh. (*Id.* at 61- 62.) Stab wound number 5 went into her right shin. (*Id.* at 62.) Stab wound number 6, shows that the knife went in and out of her left forearm. (*Id.* at 62-63.) The medical examiner went on to describe the rest of the victim's injuries, all of a type which allowed the state to prove that she was intentionally murdered with a knife. (*Id.* at 63-67.)

An attorney's "[t]actical and strategical decisions, 'if based on informed and reasoned practical judgment' will not be second-guessed." *Ransom, v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997) (citing *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989) (quoting *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985); *see Kitchens v. Johnson*, 190 F.3d 698,704 (5th Cir. 1999); *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999); *Carter v. Johnson*, 131 F.3d 452, 466 (5th Cir. 1997). Courts will not find ineffective assistance of counsel merely because of a disagreement with counsel's trial strategy. *See Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Green v.*

*Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).  Counsel's decision to cross-examine the medical examiner can be attributed to trial strategy and Petitioner has failed to prove otherwise.  He has failed to show that the state courts' adjudication of this claim was unreasonable.

### 23.    *Failure to know relevant criminal law concerning the confrontation clause*

Petitioner argues that his attorney failed to stay abreast of the law concerning the confrontation clause, and if he had, he would have objected to Exhibits 66-87 and 30-41 because the photographer was not available to testify. (doc. 3 at 10-11.)  He cites *Crawford v. Washington*, 541 U.S. 36 (2004), and *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009).  (doc 3 at 11; doc.13-16 at 15.) The Supreme Court in *Crawford* held that out-of-court statements that are testimonial are barred under the confrontation clause unless the witness is unavailable, or the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 36. In *Melendez-Diaz*, the Supreme Court held that certificates of analysis sworn by lab analysts were affidavits, and therefore testimonial and subject to the confrontation clause. 557 U.S. at 310.

The state habeas court found:

Applicant claims that counsel was ineffective for failing to keep abreast of the law and failing to object to the introduction of photographs without the testimony of the person who developed the photos. Neither of the cases cited by the applicant stand for the proposition that photographs must be authenticated by producing the photo developer who printed the pictures. Rather, the photos are authenticated by introducing testimony that the photos are accurate representations of what they purport to be. The accused can then confront and cross-examine the witness as to the nature of the photographs. As counsel had no grounds to object to the photographic evidence, counsel cannot be found ineffective. This claim is without merit.

(doc. 13-16 at 130, Finding No. 25.)

The photographic exhibits were properly authenticated pursuant to Rule 901(b)(1) by a witness with knowledge that the scenes depicted in the photographs were what they were claimed to

34

represent and admitted.  The medical examiner testified that Exhibits 66-87 were photographs taken during the autopsy. (doc. 13-7 at 54.)  The bricklayer testified that the photographic evidence of the house, the back door, and the area around his house in Exhibits 30 through 41 were what they were purported to be. (doc. 13-6 at 155-56.)  Petitioner has failed to establish a confrontation clause violation or that his attorney was not abreast of the law.  He has failed to establish that the denial of this claim based on the trial court's findings was objectively unreasonable.

### 24.  *Failure to request a ruling on his objections during closing argument*

Petitioner next alleges that counsel failed to seek an affirmative ruling on his objection that the prosecutor's closing argument was improper and that he was using facts not in evidence. (doc. 3 at 11.) He argues that the judge's instruction to the jury was insufficient to cure the error.  (*Id.*)

The prosecutor argued,

So if you really put this in perspective, she had lived with a whole lifetime of violence. He didn't work. He stole from her. He hit her. If she wouldn't give him money, he beat it from her.

Mr. Hayes: I object. That's not–not only is that wrong and improper, that assumes facts not in evidence, and it's improper closing argument. No one has testified anything along those lines.

The Court: All right. The jury will remember what the evidence is.

(doc. 13-7 at 108.)  The trial court found:

The court's instruction to the jury to consider the evidence presented cured any error. Further objection by counsel would not have changed the outcome of the proceeding. This allegation is without merit.

(doc. 13-16 at 130, Finding No. 26.)

Any harm from an improper jury argument by the prosecution is cured when the jury is instructed to disregard the argument, unless the argument was so inflammatory that its prejudicial

effect could not reasonably be overcome by such an instruction. *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994). Texas law provides that an instruction to the jury to "remember the testimony" is sufficient to cure error during closing. *See Mendiola v. State*, 924 S.W.2d 157, 164 (Tex. App.–Corpus Christi 1995). During closing argument, the prosecutor is permitted to summarize the evidence and to make a reasonable deduction from the evidence. *Alejandro v. State*, 493 S.W.2d 230, 231-32 (Tex. Crim. App. 1973) (citations omitted).

Even if the prosecutor's argument was objectionable, the court's instruction to the jury to "remember what the evidence is" cured the error. *See Wilkerson*, 881 S.W.2d at 327; *Mendiola* , 924 S.W.2d at 164.  Considering the evidence, Petitioner has not shown that the trial's outcome would have been different had his attorney sought a ruling or objected further. In accordance with the state courts' rulings, this claim is without merit.

### 25.   *Failure to object to Detective Ellzey's improper testimony as to guilt*

Petitioner alleges that his attorney should have objected and moved to strike comments by Detective Ellzey that invaded the province of the jury:  "In my opinion, this case is very well cut and dried. We know who did it"; and "That's what a life is worth, a minute's pause, I guess– I guess he showed a minute's pause."  (doc. 3 at 11.)

The state habeas court noted that the issue was rejected on direct appeal:  "This court agrees with and is bound by the Court of Appeals['] opinion." (doc. 13-16 at 139-31, Finding No. 27) (citing *Ex part Acosta*, 762 S.W.2d 470 (Tex. Crim. App. 1984).  Petitioner did raise the issue on appeal but framed it as trial court error regarding Detective Ellzey's conclusion that the offense "definitely fits the criteria for capital murder." *Jones,* 2009 WL 3366559, at *3-4.  The state appellate court found that although the trial court may have erred in overruling trial counsel's objection to the detective's

opinion on a legal question, the error was harmless:

> Appellant argues that Detective Ellzey's statement was not admissible under Rule of Evidence 702, which states, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. An expert witness may state an opinion on a mixed question of law and fact as long as the opinion is confined to the relevant issues and is based on proper legal concepts. *Anderson v. State*, 193 S.W.3d 34, 38 (Tex. App. –Houston [1st Dist.] 2006, pet. ref'd). However, an expert witness may not testify to his opinion on a pure question of law. *Id*. As the court of criminal appeals explained,

>> The use of expert testimony must be limited to situations in which the expert's knowledge and experience on a relevant issue are beyond that of an average juror. The decision to be made remains with the jury, but the testimonial expert is allowed to enable the trier of fact to better comprehend the full significance of the evidence. The evidence at issue is admissible if it encompasses or "embraces" an ultimate fact; it may not decide that fact for the jury.

> *Duckett v. State*, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990), *overruled on other grounds by Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993).

> In this case, Detective Ellzey's testimony decided the ultimate fact for the jury, whether the undisputed fact that appellant broke into the house and killed Jones constituted capital murder. His testimony that the undisputed facts constituted the offense of capital murder was not designed to enable the jurors "to better comprehend the full significance of the evidence" while leaving the ultimate decision to the jury. *Id.* His testimony decided the issue of guilt for the jury. Accordingly, his opinion was inadmissible. We conclude the trial court erred in admitting the testimony.

> Having found the trial court erred, we must determine whether the error was reversible. The error in this case was not of constitutional dimension, so we consider whether the error "affect[ed] substantial rights." Tex. R. App. P. 44.2(b)("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). The court of criminal appeals has construed this to mean,

>> an error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict. We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but slight effect.

*Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008)(footnote omitted).

> The error, in this case was the trial court's allowing Detective Ellzey to testify to the legal conclusion that "breaking into a home to commit assault or an aggravated assault and then killing someone" is capital murder. Appellant asserts this error was harmful for two reasons. First appellant argues the detective's legal conclusion was incorrect. However, as explained above, the detective's conclusion is consistent with the holdings of the court of criminal appeals. Therefore, in light of the court of criminal appeals' decisions in Matamoros and Homan, the detective's legal conclusion was correct. Second, appellant argues that the testimony resulted in the jury's rejection of appellant's defense that he was guilty only of murder. However, to the extent appellant's defense was based on his argument that the alleged murder could not also be the felony in the aggravating burglary, it lacked a valid basis. As explained above, the court of criminal appeals has expressly held that entering a building or habitation without the effective consent of the owner and killing a person therein constitutes capital murder because it is murder in the course of committing burglary. *See Homan* [v. State], 19 S.W.3d [847]at 849 [(Tex. Crim App. 2000)]; *Matomoros* [v. State], 901 S.W.2d [470], at 474 [(Tex. Crim. App. 1995)].

> We conclude the error, in admitting the detective's legal conclusion did not affect appellant's substantial rights. Tex. R. App. P. 44.2(b). We overrule appellant's fourth issue.

*Jones,* 2009 WL 3366559, at *4.

Because the state appellate court issued "the last reasoned opinion" regarding the underlying legal issue, its decision is reviewed to determine whether the denial of this claim was contrary to or an unreasonable application of federal law. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The appellate court ultimately found that Detective Ellzey's testimony did not have a substantial and injurious effect on the jury's verdict. By the same reasoning, counsel's decision not to object could not have changed the trial's outcome. Petitioner has failed to demonstrate that the appellate court's decision was unreasonable.

### 26.     *Failure to subpoena Gabrielle Brown's telephone records*

Petitioner argues that his attorney was ineffective for failing to subpoena Gabrielle Brown's

telephone records. (doc. 3 at 11.)  He asserts that  counsel made no true effort to investigate her claims alleging that Petitioner had repeatedly phoned her.

Counsel cross-examined Gabrielle Brown about her statements:

Q. You said he called you several times over a six or eight month period. How many times do you think he called you?

A. I'd say once a week, and then it stopped for maybe a month and a half, and then he started back again.

Q. What number did he call you on?

A. He called my cell phone number.

Q. Do you have any of those cell phone records?

A. No.

Q. Do you think you could get them?

A. Maybe.

Q. Do you think you could look online and print them up or something?

A. I don't even have that number anymore, so I don't know.

Q. Are you with the same company?

A. No.

Q. Do you remember that number?

A. No.

Q. Do you think you could find that number?

A. I can find it. I can find it, yes.

Q. And maybe get that to me sometime in the next day or two?

A. Sure.

(doc. 13-6 at 85-86.)   The trial court found:

> The applicant clams that counsel made no effort to subpoena the phone records of the witness Gabrielle Brown to impeach the claim that he repeatedly telephoned her trying to find the location of the victim in this case. In light of the overwhelming evidence of guilt in this case, the court cannot see how this impeachment evidence would have changed the outcome of the proceeding. For that reason, this allegation is without merit.

(doc. 13-16 at 131, Finding No. 28.)

Counsel has a duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. *See Moore v. Johnson*, 194 F.3d 586, 616 (5th Cir.1999) (citing *Strickland*, 466 U.S. at 691).   Counsel is not required to pursue every path until it bears fruit or until all conceivable hope withers, however. *Moore*, 194 F.3d at 616. When assessing the reasonableness of an attorney's investigation, a court must consider "not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial. *Id.*; *see also Gray v. Lucas*, 677 F.2d 1086, 1093 (5th Cir. 1982); *United States. v. Lewis*, 786 F.2d 1278, 1283 (5th Cir.1986).

Petitioner has failed to show that his attorney's decision not to subpoena the phone records, but to instead to emphasize that Brown failed to prove that Petitioner had called her by bringing the records, was not strategic and entitled to deference. *Ransom,* 126 F.3d at 721; *Kitchens*, 190 F.3d at 704; *Lamb,* 179 F.3d at 358; *Carter,* 131 F.3d at 466.   He must allege with specificity what further investigation would have revealed and how it would have changed the outcome of the trial, but he has failed to do so.   Furthermore, the evidence of guilt in this case was overwhelming.   Petitioner has

40

failed to prove that the state court's adjudication of this claim was objectively unreasonable.

### 27.   Failure to request a directed verdict

Petitioner alleges that his trial counsel was ineffective for failing to request a directed verdict on the grounds that the state had not proven every element of the offense of burglary because the homeowner gave him consent to enter the home. (doc. 3 at 11-12.)

The state court found "there were no grounds to request or grant this motion therefore, counsel cannot be held ineffective.  This allegation is without merit." (doc. 13-16 at 131, Finding No. 29.)

Petitioner's trial counsel did request a directed verdict:

Mr. Hayes: Well, Judge, prior to that, I'd like to move for a directed verdict on the issue of capital murder. They have not had any evidence as to what the intent – what Mr. Jones's intent was when he entered the house.

There's nothing to indicate there's any intent to commit assault. There's nothing to indicate there was intent to commit aggravated assault.

There certainly is evidence that a murder took place once he got inside the house. But I think, as far as on evidence of burglary, we're moving for a directed verdict on that.

We're also moving for a directed verdict on every other issue involved based on the fact that they haven't been proven beyond a reasonable doubt.

And for the reason I mentioned and for any other reason of law, we move for that at this point.

The Court: Denied.

(doc. 13-7 at 89.)  Counsel cannot be found deficient for failure to move for a directed verdict because he did in fact move for a directed verdict.  This claim is without merit and should be denied.

### 28.   Failure to subpoena the homeowner as a witness

Petitioner alleges that his attorney was ineffective for failing to subpoena the homeowner as

a witness to testify that she gave him permission to enter the home.  (doc. 3 at 12.)

The state habeas court concluded, "[E]vidence that the applicant might have been invited to the house does not negate the fact that he kicked the door down and killed the victim in this case. Even if an invitation was extended, it was not an invitation to break into the house and kill the victim. This allegation is without merit." (doc. 13-16 at 131-32, Finding No. 30.)

Petitioner has failed to establish that the witness was available to testify and that she would have testified in his favor. *See Boyd*, 661 F.2d at 390; *Lockhart*,782 F.2d at 1282.  He has not produced the requisite affidavit of this uncalled witness. *See Cockrell*, 720 F.2d at 1427.  He has failed to show that the state court's adjudication of this claim was unreasonable.

### 29.  *Failed to hire a medical expert to testify on head trauma and concussions*

Petitioner alleges that his attorney was ineffective for failing to hire a medical expert to testify how his head trauma may have affected the voluntariness of his confession, and which would have resulted in his confession being suppressed.  (doc. 3 at 12.)

The state habeas court made the following finding:

> There is no reason to believe that expert medical testimony would have presented evidence to toss the confession in this case. Further, even if the confession was tossed, the remaining evidence overwhelmingly establishes the applicant's guilt. The applicant cannot show the outcome of the proceeding would have been different had medical testimony been presented. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed 2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53 (Tex. Crim. App. 1986). The applicant has the burden of proof in a writ of habeas corpus. *Ex parte Alexander*, 598 S.W.2d 308 (Tex. Crim. App. 1980). The applicant has failed to meet that burden. This allegation is without merit.

(doc. 13-16 at 132, Finding No. 31.)   Petitioner has not provided any proof of what the expert's testimony might have been. *See Cockrell*, 720 F.2d at 1427.  He has failed to show that the adjudication of this claim based on the trial court's findings was objectively unreasonable.

### 30.     Cumulative effect of trial counsel's errors

Petitioner alleges that trial counsel's errors should be examined to determine whether their cumulative harm is sufficient to cause prejudice. (doc. 3 at 12.)

The cumulative error doctrine provides that "an aggregation of nonreversible  errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998). Federal habeas corpus relief is granted on the basis of cumulative errors only if the error is of a constitutional dimension. *See Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997) (citation omitted); *see also Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993) (holding habeas relief only granted where "(1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial the resulting conviction violates due process.'") (quoting *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (en banc)).

Here, the state court found that none of the alleged deficiencies that Petitioner identified amounted to ineffective assistance of counsel.  *See* (doc. 13-16 at 132, Finding No. 32)("The court has examined each of the allegations of ineffective assistance of counsel and found none to be supported by the record.  This allegation is without merit" ); *see generally  United States v. McIntosh*, 280 F.3d 479, 484 (5th Cir. 2002) ("He has not established any error; therefore, there is nothing to cumulate"), *overruled on other grounds*, *United States v. Cotton,* 535 U.S. 625 (2002).   Relief is therefore not available under the cumulative error doctrine. *See generally United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (no cumulative error where defendant failed to identify single error in jury selection); *Miller*, 200 F.3d at 286 n.6 (petitioner who failed to demonstrate any error during

43

trial could not establish cumulative error).

**B.      Appellate counsel**

Petitioner alleges that his appellate counsel was ineffective for failing to raise the ineffective assistance of trial counsel on appeal.

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*.   Under *Strickland*, Petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir.1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.' " *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland,* 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462–63 (footnote and citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.   Petitioner has failed to make these showings.

As noted, none of the alleged deficiencies that Petitioner identified amounted to ineffective assistance.  Petitioner has not alleged or shown a reasonable probability that he would have prevailed

on his appeal if counsel had raised those alleged deficiencies on appeal.

## C.     Due Process

Petitioner claims that he was denied due process based on the ineffective assistance of both trial and appellate counsel. (doc. 13-16 at 38-43, 91-101.)  The state habeas court found,

> The applicant next claims a due process violation due to the deficient performances by trial and appellate counsel. The specific grounds were found to be without merit in the above findings and found to be unsupported by the record. The court finds no need to again address these issues. This allegation is without merit.
>
> The applicant next asserts that appellate counsel was ineffective for failing to bring the issues raised in this writ to the attention of the Court of Appeals. As the court has found each of the issues to be meritless, the court cannot find counsel ineffective. This allegation is without merit.

(doc. 13-16 at 135, Finding Nos. 41 and 42.)  Petitioner failed to show that the denial of this claim based on the trial court's findings was objectively unreasonable.

## IV.  DOUBLE JEOPARDY AND VAGUENESS OF STATUTE (Grounds II and III)

Petitioner alleges in ground II that he was denied due process because the indictment failed to specify how his actions constituted a burglary, the murder was used for three purposes, and his conviction violates the "Blockburger test" (i.e., his right not to be subjected to double jeopardy).[4] (doc. 3 at 6, 12.)   Petitioner also alleges in ground III that the aggravating element of the capital murder statute is unconstitutionally vague and overbroad.  *Id.* at 13.

The trial court noted that both of these claims were rejected on direct appeal:

> The applicant claims that his due process and double jeopardy rights were violated when the

---

[4]The Double Jeopardy Clause "protects an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Burks v. United States,* 437 U.S. 1, 11 (1978) (quoting *Green v. United States,* 355 U.S. 184, 187 (1957) (other citations omitted)). In *Blockburger v. United States,* 284 U.S. 299, 304 (1932), the Supreme Court held that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one [for purposes of the Double Jeopardy Clause] is whether each [statutory] provision requires proof of a fact which the other does not."

State failed to specify how the applicant committed the underlying felony in this capital murder case. This issue was raised and rejected on direct appeal. This court agrees with and is bound by the Court of Appeals opinion. *Ex parte Acosta,* 762 S.W. 2d 470 (Tex. Crim App. 1984). . . .[5] The applicant claims that the capital murder statue is unconstitutionally vague. The argument presented in this allegation is the same as the above-discussed allegation. Again, this issue was raised and rejected on direct appeal. This court agrees with and is bound by the Court of Appeals opinion.

(doc. 13-16 at 132-33, Finding Nos. 33 & 34.)  The appellate court stated:

Appellant's first three issues all concern whether he can be convicted of capital murder with the aggravating element of burglary of a habitation when the felony for the burglary is the murder of the complainant. In other words, appellant asserts the same murder cannot be used for both the murder and the burglary elements of capital murder. In his first issue, appellant argues that the evidence is legally insufficient to convict him of capital murder because Jones's murder was both the alleged murder and the felony in the burglary allegation. In his second issue, he asserts the jury charge was erroneous because it permitted the jury to find him guilty of capital murder of Jones if it found that Jones's murder was the felony in the burglary allegation. In his third issue, he argues that he lacked effective assistance of counsel because trial counsel did not object to this asserted defect in the jury charge.

Appellant argues that interpreting the capital murder statute to permit the alleged murder to form the felony in the aggravating burglary would defeat the legislature's intent that capital murder be limited to "a small group of narrowly defined and particularly brutal offenses." *Jurek v. State*, 522 S.W.2d 934, 939 (Tex. Crim. App. 1975), aff'd, 428 U.S. 262 (1976). Appellant asserts that such an interpretation would elevate a case from murder to capital murder "even if a defendant only criminally trespassed into a residence and murdered the occupant of the residence." Appellant argues that such an interpretation was not the intent of the legislature when it required the commission of a burglary and not merely a criminal trespass.

The court of criminal appeals, however, has interpreted the statute to permit the alleged murder to be the underlying felony in the aggravating element of burglary. In *Homan v. State*, 19 S.W.3d 847 (Tex. Crim. App. 2000), the defendant was angry with the complainant, his ex-wife, and he drove to her house. There, he "gained entrance in spite of her protests," and he killed the complainant. *Id.* at 848 n. 2. The court of appeals reversed his conviction, concluding "that the murder of the victim could not be used to make the entry in her home a burglary and, at the same time, use the burglary as the aggravating offense to make the murder into a capital murder."

---

[5]The citation to *Ex parte Acosta,* 672 S.W. 2d 470 (Tex. Crim. App. 1984) in the state court's findings was incorrect.

*Id.* at 847, 848. The Texas Court of Criminal Appeals reversed the court of appeals and observed, "This Court has upheld capital murder convictions, concluding that the evidence sufficiently established the underlying felony of burglary by murder of the victim following the unlawful entry into the habitation." *Id.* at 849. Likewise, in *Matamoros v. State*, 901 S.W.2d 470 (Tex. Crim. App. 1995), which was an appeal of a capital murder conviction where burglary was the aggravating element, the court stated,

> The jury was instructed that a person commits the offense of burglary "if, without the effective consent of the owner, he: ... enters a habitation and commits or attempts to commit a felony or theft." In a capital murder prosecution, the requirement that a felony be committed is satisfied by the actual murder of the victim.

*Id.* at 474. This Court, relying on *Homan*, also concluded that in a capital murder case with burglary as the aggravating element, the complainant's murder could be the felony in the burglary. *See Brown v. State*, 92 S.W.3d 655, 659 (Tex. App. –Dallas 2002)(citing *Homan*), aff'd, 122 S.W. 3d 794 (Tex. Crim. App. 2003).

Appellant observes that Judge Johnson delivered a dissenting opinion in *Homan* that disagreed with the majority's decision because it "relies upon case law which has no basis in logic and which misinterprets earlier precedent." *Homan*, 19 S.W.3d at 851 (Johnson, J., dissenting). Appellant asks that we follow Judge Johnson's reasoning in her dissenting opinion. However, this Court is bound by the precedents of the court of criminal appeals, including those made by the majority of the court in *Matamoros* and *Homan*. *See Brown*, 92 S.W. 3d at 659. Because appellant's argument has been rejected by the majority of the court of criminal appeals, we overrule his second and third issues.

*Jones,* 2009 WL 3366559, at *2-3.

The appellate court's opinion is entitled to the same deference as trial judges' findings. *Sumner v. Mata,* 455 U.S 591, 592-93. Petitioner must show that its analysis of his due process and double jeopardy allegations, as the "the last reasoned opinion", was contrary to or an unreasonable application of federal law. *See Ylst*, 501 U.S. at 803. He has failed to show how the state court's adjudication of his claims was unreasonable.

## V.  SUFFICIENCY OF THE EVIDENCE (Grounds IV and V)

Petitioner alleges that the state failed to prove an essential element of the offense of burglary,

i.e., that he did not have the homeowner's consent to enter the home. (doc. 3 at 13.)  He also complains that his conviction was the result of combining "inference upon inference" and "speculation upon speculation."  *Id*. at 18.

The state habeas court found these claims to constitute attacks on the sufficiency of the evidence that were not cognizable in a writ of habeas corpus and therefore without merit. (doc. 13-16 at 135-36, Finding Nos. 35 and 36) (citing *Ex parte Easter*, 615 S.W.2d 719 (Tex. Crim. App. 1981) and *Ex parte Smith*, 296 S.W.3d 78 (Tex. Crim. App. 2009)).

## A.   <u>Procedural Bar</u>

When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir.1995).  Petitioner did raise a sufficiency of the evidence challenge to whether he could be convicted of capital murder where the victim's murder was both the alleged murder and also the felony in the burglary charge. *See Jones*, 2009 WL 3366559, at *2; *see* (doc. 13-13 at 2.)  He did not challenge the sufficiency of the evidence to prove the essential element of burglary (ground IV) or the sufficiency of evidence based on only inferences and speculation (ground V) until he filed his state writ application. (doc. 13-16, at 24-30, 82-85.)  The failure to raise these claims on direct appeal would have made them improperly raised in a petition for discretionary review.  The failure to properly present these claims to the highest court in Texas constitutes a procedural default that could bar consideration on federal habeas review. *See In re Bagwell*, 401 F.3d 312, 315 (5th Cir. 2005); *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004).

Petitioner did not cure this procedural default by presenting these legal sufficiency claims to the Texas Court of Criminal Appeals through an application for writ of habeas corpus. Under Texas

law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n. 18 (5th Cir.1996) (recognizing that this is a long-standing legal principle under Texas law) (citations omitted). The Texas Court of Criminal Appeals denied Petitioner's state application for writ of habeas corpus raising these insufficient evidence grounds without written order based on the trial court's findings. This decision was an adjudication on the merits. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). Furthermore, when the Court of Criminal Appeals denies a state application for writ of habeas corpus without written order, it implicitly denies sufficiency claims on the procedural basis that such claims are not cognizable on state habeas review. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004) ("[A] disposition is related to the merits if it decides the merits *or makes a determination that the merits of the applicant's claims can never be decided*") (quoting *Ex parte Williams,* 703 S.W.2d 674, 677 (Tex. Crim. App. 1986) (emphasis in original) (other citation omitted)).

Petitioner has procedurally defaulted his legal-sufficiency-of-the-evidence ground IV and V under Texas law. This default constitutes an adequate and independent state procedural ground to bar federal habeas review of such a sufficiency-of-the-evidence claim. *See Reed v. Thaler,* 428 F.App'x 453, 454 (5th Cir. 2011) (citing *Busby,* 359 F.3d at 718 and *Ex parte Grigsby*, 137 S.W. 3d at 674). When a defendant fails to properly exhaust insufficiency-of-the-evidence claims, the court may find the claims procedurally barred if the "time to file a petition for discretionary review has expired." *Haley v. Cockrell*, 306 F.3d 257, 264 (5th Cir. 2002) (citing Tex. R. App. P. 68.2), *vacated on other*

*grounds*, 541 U.S. 386 (2004). Petitioner cannot now present the claim in a petition for discretionary review because the time for doing so has passed, and he cannot properly present the claim in another state writ application under state law. The claim is therefore procedurally barred unless Petitioner overcomes the bar by showing cause and prejudice or a fundamental miscarriage of justice. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000).

Petitioner has shown no cause for his failure to present these sufficiency claims to the Court of Criminal Appeals and no actual prejudice. Nor has he demonstrated a need to prevent a miscarriage of justice. The latter exception is "confined to cases of actual innocence, 'where the petitioner shows, as a factual matter, that he did not commit the crime of conviction.' " *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir.1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (other citation omitted)). Claims of insufficient evidence differ materially from an assertion of actual innocence. Petitioner has not shown factually that he did not commit the crime of which he was convicted, so he has not overcome the state procedural bar. Accordingly, the procedural default doctrine bars federal habeas relief on these grounds for relief.[6]

## B. Merits

On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002). To be sufficient, "[t]he evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a

---

[6]To the extent Petitioner claims that the evidence is factually insufficient to support his conviction, this claim is also not cognizable in a federal habeas action. *See Spencer v. Dretke*, No. 3:02–CV–1988–D, 2005 WL 696719, at *4 n. 2 (N.D.Tex. Mar. 23, 2005), *recommendation accepted*, 2005 WL 955969 (N.D.Tex. Apr. 26, 2005).

reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Terrell*, 700 F.3d 755, 760 (5th Cir. 2012). Under *Jackson*, a reviewing court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). The evidence must be viewed "in the light most favorable to the verdict, accepting all credibility choices and reasonable inferences made by the trier of fact which tend to support the verdict." *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (quoting *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997)); *see also Weeks v. Scott*, 55 F.3d 1059, 1061 (5th Cir. 1995) (a federal court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict). The *Jackson* standard applies in both direct and circumstantial evidence cases. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990).

The trial court summarized the facts as follows:

The applicant and his wife, the complaining witness in this case, had a stormy 29-year marriage that resulted in a divorce and remarriage prior to the complaining witness leaving the applicant and hiding from him for a length of time. The applicant spent long periods of time questioning his children and other family members trying to find his wife. The applicant threatened to kill her numerous times prior to completing the act. When the applicant did find her, he threatened her, kicked down the door to the house and, in front of the victim's niece, stabbed her to death. The eyewitness to the offense testified at trial. The applicant then proceeded to run from the crime scene and hid in a neighbor's house. When found by the neighbor, the applicant ran away all the while shouting that he had just killed his wife. The neighbor witness testified at trial. When stopped by the police soon after, the applicant told the police he killed his wife and was video and audio taped admitting to the crime in the back of the cop car. After receiving treatment for his injuries, the applicant was taken to the police station where he again confessed while being video taped. After being video taped, the applicant was taken to Parkland Hospital for non-threatening injuries to his hand and knee. The medical records from this visit indicate that the applicant also told the hospital personnel that the injuries were obtained while stabbing his wife. Basically, the applicant confessed his guilt to every person

he saw after the commission of this offense. All of this testimony was presented to
the jury. There is no question of the applicant's guilt in this case.

(doc. 13-16 at 121-22, Finding No. 2.)

The evidence, as cited by the state habeas court, is sufficient when viewed in the light most
favorable to the prosecution, for any rational trier of fact to have found the essential elements of the
crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. The jury was the fact-finder, and it was
within its sole province to assess the credibility of the witnesses and resolve any conflicts in the
evidence. *See United States v. Green*, 180 F.3d 216, 220 (5th Cir. 1999); *United States v. Monroe*,
178 F.3d 304, 307 (5th Cir. 1999) ("it is the sole province of the jury, and not within the power of
this Court, to weigh conflicting evidence and evaluate the credibility of witnesses") (citing *United
States v. Ivey*, 949 F.2d 759, 767 (5th Cir. 1991); *United States v. Layne*, 43 F.3d 127, 130 (5th Cir.
1995) ("It is the jury's 'unique role' to judge the credibility and evaluate the demeanor of witnesses
and to decide how much weight should be given to their testimony") (citation omitted)). A jury is
not to be second-guessed by a reviewing court in its choice of which witnesses to believe. *See United
States v. Zuniga*, 18 F.3d 1254, 1260 (5th Cir. 1994) (citing *United States v. Jones*, 839 F.2d 1041,
1047 (5th Cir. 1998)). Moreover, "[t]he habeas corpus statute obliges federal judges to respect
credibility determinations made by the trier of fact." *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th
Cir. 1993) (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)).

The evidence overwhelmingly establishes that Petitioner unlawfully and intentionally caused
the victim's death by stabbing and cutting her with a knife, a deadly weapon, and he was then and
there in the course of committing and attempting to commit the offense of burglary. (doc. 13-1 at 6,
53); *see also* Tex. Penal Code 19.02. As noted, even if the homeowner had consented or the victim
had invited him in, it was not an invitation to break into the house and kill the victim. (doc. 13-16 at

131-32, Finding No. 30). Moreover, the jury heard the medical examiner's explanations of the victim's numerous stab wounds, one of which was directly in the heart and fatal. (doc. 13-7 at 58-60.) Although the court may have been presented with some conflicting evidence, reconciliation of conflicts in the evidence was within the exclusive province of the finder of fact. Furthermore, Petitioner does not argue, much less establish, that the state court's denial of these insufficiency-of-the-evidence grounds is a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. His claims should also be denied as without merit.

## VI. ALLEGED MISSTATEMENT OF LAW (Ground VI)

Petitioner alleges that his due process rights were violated when the prosecutor misstated the law in his closing argument and cited the wrong section of the penal code for burglary. (doc. 3 at 18.)

Prosecutorial misconduct, when alleged in habeas corpus proceedings, is reviewed to determine whether it "'so infected the [trial] with unfairness as to make the resulting [conviction] a denial of due process.'" *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000) (quoting *Ables v. Scott*, 73 F.3d 5911,592 n.2 (5th Cir. 1996) (internal quotation omitted) ; *see also Greer v. Miller*, 483 U.S. 756, 765 (1987). This means the alleged conduct must render the trial fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment. *Darden v. Wainwright*, 477 U.S. 168, 180-181 (1986). "To constitute a due process violation, the prosecutorial misconduct must be of 'sufficient significance to result in the denial of the defendant's right to a fair trial.'" *Greer*, 483 U.S. at 765 (citation and internal citation omitted). In turn, a trial will not be deemed fundamentally unfair unless "there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Barrientes*, 221 F. 3d at 753 (quoting *Foy v.*

*Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992)). Only in the most egregious situations will a prosecutor's improper conduct violate constitutional rights. *Ortega v. McCotter*, 808 F.2d 406, 410-11 (5th Cir. 1987) (quotation omitted).

The state habeas court noted in its findings that Petitioner's attorney objected to the prosecutor's argument, and the trial court cured any error that may have occurred with a jury instruction. (doc. 13-16 at 133-34, Finding No. 37.)

> (Prosecutor): If he's going to claim, well, you know, wouldn't have ever happened if she hadn't pulled out the knife, but we got into this scuffle, and it was an accident, then you'd have manslaughter in here as a lesser-included charge and not murder. Murder is knowingly and intentionally killing.
>
> Mr. Hayes: Your Honor, I'm actually going to object. That's a misstatement of the law and a misstatement of the law we covered, Your Honor.
>
> The Court: All right. The jury will have the law in the charge.

(doc. 13-7 at 107.)

Petitioner has failed to demonstrate that the prosecutor's argument was so inflammatory that its prejudicial effect could not reasonably be overcome by the Court's jury instruction. *Wilkerson*, 881 S.W.2d at 327 (instruction will cure prosecutorial error unless the remark was so inflammatory that prejudice could not be overcome by the instruction) (citation omitted).  He has not shown that it was of "sufficient significance" to result in the denial of a fair trial.  *Greer*, 483 U.S. at 765.  He has failed to show "a reasonable probability that the verdict might have been different had the trial been properly conducted." *Barrientes,* 221 F. 3d at 753.  Petitioner has failed to demonstrate that the state court's denial of this claim was objectively unreasonable.

### VII.  DENIAL OF MOTION TO SUPPRESS (Ground VII)

Petitioner alleges that the trial court's denial of his motion to suppress his confession, which

he says was made unknowingly and involuntarily because of a head injury, violated his due process

rights. (doc. 3 at 18-19.)  He also claims that his due process rights were violated because he did not

have an expert to testify about his head injury.  (*Id.* at 19.)

On federal habeas review of state court convictions, a federal harmless error standard applies.

*See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). To be actionable, a trial court error must

have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht*,

507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Under this standard,

a petitioner is not entitled to federal habeas relief based on trial error unless he can establish that the

error resulted in actual prejudice. *See Brecht,* 507 U.S. at 637. "[A] state defendant has no

constitutional right to an errorless trial." *Bailey v. Procunier,*  744 F.2d 1166, 1168 (5th Cir. 1984).

In response to this claim the trial court found:

> The applicant has cited no legal or medical evidence that the injuries allegedly
> suffered by the applicant caused him to speak in such a way as to render the
> statement inadmissible. The confession of the applicant was videotaped and
> presented to the court and the jury. There is no evidence in the record or this writ that
> indicates that head injuries causee the applicant to talk more freely than he would
> have done without the head injuries. The applicant has the burden of proof in a writ
> of habeas corpus. *Ex parte Alexander*, 598 S.W.2d 308 (Tex. Crim. App. 1980). The
> applicant has failed to meet that burden. The court will add that prior to trial it was
> determined by a medical expert that the applicant was competent to stand trial. This
> allegation is without merit.

(doc. 13-16 at 134, Finding No. 38.)

Petitioner has failed to provide any evidence that his head injury influenced his decision to

confess.  He cannot show that the trial court's denial of his motion to suppress had a substantial and

injurious effect on the jury's verdict. *Brecht*, 507 U.S. at 637.  The trial court found that the evidence

showed that he "confessed his guilt to every person he saw after the commission of this offense."

(doc. 13-16 at 122, Finding No. 2.)  Petitioner has failed to establish a denial of due process or that

55

the state court's adjudication of this claim was unreasonable.

## VIII.  OVERRULED OBJECTIONS (Ground VIII)

Petitioner alleges that his due process rights were violated when the trial court overruled his

attorney's objections.  The state habeas court found:

> The applicant next claims that every overruled objection by the court resulted in a
> due process violation. The court has reviewed the objections and found no error in
> the original rulings and sees no ground to revisit every objection at this time. The
> court's rulings were discussed in the ineffective assistance of counsel allegations and
> found to be valid. The allegation is without merit.

(doc. 13-16 at 134, Finding No. 39.)  Petitioner cannot show a substantial and injurious effect on the

jury's verdict occurred because the court overruled his objections. *Brecht*, 507 U.S. at 637.  The

evidence against Petitioner was overwhelming and this claim is without merit and must be denied.

## IX. UNAUTHENTICATED EVIDENCE (Ground IX)

Petitioner alleges that he was denied due process when exhibit 63 was offered into evidence

although it was not properly authenticated.  (doc. 3 at 21.) Exhibit 63 is a copy of the forensic

biologist's report on the blood and bodily fluids on the items offered in evidence. (doc.13-7 at 34-35.)

The forensic biologist testified that exhibit 63 appeared to be an exact copy of her report.  (*Id.* at 34.)

Exhibit 63 was properly authenticated pursuant to Texas Rules of Evidence 901(b)(1), by a

witness with knowledge that it was what it was claimed to be.  Moreover, Petitioner's attorney stated

that he had no objection to the admission of Exhibit 63, so the claim is procedurally barred. "A party

generally may not invite error and then complain thereof." *U.S. v. Baytank (Houston), Inc.*, 934 F.2d

599, 606 (5th Cir. 1991) (citation omitted); *see also United States v. Puig-Infant*, 19 F.3d 929, 941

(5th Cir. 1994).  Because counsel did not object to this at trial, the claim is not preserved for review.

*See Hodge v. State*, 631 S.W.2d 754, 757 (Tex. Crim. App. 1982); *Williams v. State*, 549 S.W.2d 183,

187 (Tex. Crim. App. 1977). The Supreme Court has held that the procedural default of a state defendant who fails to comply with the contemporaneous objection rule precludes federal habeas review of the claim absent a showing of cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 87(1977); *see also Nichols v. Scott*, 69 F.3d 1255, 1280 (5th Cir. 1995).

The state habeas court found this claim to be without merit. (doc. 13-16 at 135, Finding No. 40). It is both without merit and procedurally barred, and Petitioner has failed to show that the denial of this claim was unreasonable.

## X.  JURY CHARGE (Ground XI)

Petitioner claims:

The Due Process Clause of the Fourteenth Amendment was violated where the Jury Charge erroneously allowed the jurors to convict based upon its finding that I had committed a burglary in the course of committing an aggravated assault, or a murder; and where the Jury Charge allowed a conviction based on legal theories not supported by federal law, where such an application defeats the Supreme Court's requirement that capital murder conviction schemes must be narrowly defined.

(doc. 3 at 26-27.)  He did not list this ground in his state writ application.  It appears to be a restatement of the grounds he asserted on direct appeal and in his petition for discretionary review. *See Jones,* 2009 WL 3366559, at 2-3; *see also* (doc. 13-13 at 15-17.)  Petitioner has made no showing that the state court's resolution of this claim was in violation of § 2254(d).

## XI.  JURY VERDICT (Ground XIII)

Petitioner alleges that there is a very distinct possibility that the jury verdict was not unanimous. (doc. 3 at 34.)

There is no federal constitutional right to a unanimous jury verdict in state criminal proceedings. *Apodaca v. Oregon*, 406 U.S. 404, 406-410 (1972); *see also Johnson v. Louisiana*, 406 U.S. 356, 359 (1972) ("We note at the outset that this Court has never held jury unanimity to be a

requisite of due process of law.  Indeed, the Court has more than once expressly said that '[i]n criminal cases, due process of law is not denied by a state law . . . which dispenses with the necessity of a jury of twelve, or unanimity in the verdict'") (citations omitted)).  Rather,

> . . . the purpose of the trial by jury is to prevent oppression by the Government by providing a 'safeguard against the corrupt or overzealous prosecutor and against the complaint, biased or eccentric judge.' *Duncan v. Louisiana*, 391 U.S. [145,] 156, 88 S. Ct. [1444,] 1451 [(1968)]. 'Given this purpose, the essential feature of the jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen . . .' *Williams v. Florida, supra*, 399 U.S. [78,] 100, 90 S. Ct. [1893,] 1906 [(1970)]. A requirement of unanimity, however, does not materially contribute the exercise of this commonsense judgment.

*Apodaca,* 406 U.S. at 410.

The state habeas court made the following finding with regard to this claim:

> When the verdict was returned, the court specifically asked the jury if the verdict was unanimous and all twelve jurors assured the court that it was. (RR5:134). This allegation is without merit.

(doc. 13-16 at 135, Finding No. 43.)  After the jury returned a guilty verdict for capital murder, the court stated on the record, "If that's your verdict, if everybody will raise their hand. Okay. Let the record reflect all 12 hands were raised." (doc. 13-7 at 134.)

Petitioner's claim that the verdict possibly wasn't unanimous does not allege the denial of a constitutional right, is controverted by the record, and should be denied.

## XII.  CUMULATIVE ERROR (Ground XIV)

Petitioner alleges that the totality of errors and their cumulative effect resulted in a denial of due process and a failure of the judicial system.  (doc. 3 at 36.)  The trial court found:

> The applicant claims that the totality of errors in this case result in a total failure of the justice system. The court has found no errors in this trial or appeal therefore, finds this allegation to be without merit.

(doc. 13-16 at 135, Finding No. 44.)  Petitioner may receive relief under the cumulative error doctrine

only if he can show that constitutional errors were committed that so fatally infected his trial that they violated his right to fundamental fairness. *Spence v. Johnson*, 80 F.3d 989, 1000-01 (5th Cir. 1996). He has failed to demonstrate any constitutional errors, so this claim should be denied.

## XIII.  RECOMMENDATION

The petition for habeas corpus relief under § 2254 should be **DENIED** with prejudice.

**SO RECOMMENDED on this 20th day of November, 2015.**

*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

*Irma Carrillo Ramirez*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE